United States District Court
Western District of North Carolina
Asheville Division
No. 1:24-cv-227

Buncombe County, North Carolina,　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　Plaintiff,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　　　)
HCA Management Services, LP;　　　　　)
MH Master Holdings, LLLP;　　　　　　 )
MH Mission Hospital, LLLP; and　　　　 )
MH Hospital Manager, LLC,　　　　　　 )
　　　　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　　　)


**Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss or for Alternative Relief**

Plaintiff, Buncombe County, North Carolina, through counsel, pursuant to LCvR 7.1, hereby files its response to the motion to dismiss or for alternative relief filed October 25, 2024 (ECF 4) by Defendants, HCA Management Services LP, MH Master Holdings, LLLP, MH Mission Hospital, LLLP, and MH Hospital Manager, LLC. For the reasons stated below, the Court should deny the motion.

1

Emergency departments are required by federal law, including 42 U.S.C. § 1395dd and associated rules and regulations, to provide each ER patient with an appropriate and timely medical screening examination and stabilizing treatment. Once an individual with a potential emergency medical condition presents on hospital property, including the driveway and parking lot, the hospital is responsible for the care of the patient. "Parking" patients arriving via EMS and refusing to release EMS equipment or personnel does not delay the point at which these obligations begin and, in fact, violates federal law. (*See* ECF 1-1 ¶¶ 29-32).

Plaintiff Buncombe County has maintained at all relevant times personnel, equipment, and vehicles (collectively, "BCEMS"), for the purpose of providing cost-effective, efficient, and professional medical services to the residents of Buncombe County 24 hours a day, seven days a week. (Complaint, ECF 1-1, ¶ 16). In the past five years, the County has employed approximately 160 EMS paramedics, *inter alia*, to transport patients to the emergency department at Mission Hospital in Asheville (the "Mission ER"). BCECMS services are paid for by a combination of fees-for-service and taxpayer dollars. (*Id.* ¶ 17).

---

[1] For purposes of Defendants' motion to dismiss under Rule 12(b)(6), the factual allegations of the Complaint are taken as true and all reasonable inferences therefrom are drawn in plaintiff's favor. *E.g., Semenova v. Md. Transit Admin.,* 845 F.3d 564, 567 (4th Cir. 2017).

In the years following their acquisition of the previously nonprofit Mission hospital system in early 2019, Defendants have disregarded their statutory, contractual, and common-law obligations, allowing emergency services at the Mission ER to deteriorate dramatically. In particular, during relevant times, in order to maximize profits, Defendants have intentionally understaffed the Mission ER. As a result, Buncombe County's EMS crews have frequently experienced excessive wait times to transfer patients to the Mission ER, requiring EMS personnel to attend to emergency room patients long after arriving at the Mission ER. (*Id.*, *e.g.,* ¶¶ 1-3, 26-36, 49).

Indeed, the average wait time for BCEMS crews at the Mission ER increased from approximately 9:41 minutes in the first quarter of 2020 to 17:41 minutes in the third quarter of 2023. Concurrently, "90th percentile times"—the time in which 90% of EMS-to-ER patient transfers occur—increased from approximately 16 minutes to over 32 minutes. These 90th percentile times far exceed the 20-minute national standard reported by the National Emergency Medical Services Information System. (*Id.* ¶ 26).

The substantial increases in BCEMS wait times occurred despite numerous demands from the County beginning in about 2019, and notwithstanding the efforts of BCEMS personnel themselves (1) to move and to offload ER patients into examination rooms to expedite transfer of care, and (2) to clean and to prepare vacant ER rooms for emergency care patients, actions

3

which pull BCEMS supervisors and crews from the field and leave them unable to respond to EMS system needs. (*Id.* ¶ 28).

The County has received no additional payment from any source for the excessive wait times and additional duties required at the Mission ER but to date has borne the additional expense itself. (*Id.* ¶ 17). As the N.C. Attorney General's Complaint filed against the Defendants aptly described the situation, "HCA has coopted paramedics as employees of its own, but stuck the taxpayers with the bill." (*See* Complaint Ex. 1, ECF 1-2, at 8).

Defendants continued to shirk their responsibility to emergency care patients at the expense of the County until:

(1)     the Attorney General filed a State court action against them on December 14, 2023 (*see* ECF 1-1 ¶ 3); and

(2)      the U.S. Centers for Medicare and Medicaid Services ("CMS"), on December 9, 2023, identified the Mission ER as a candidate for "immediate jeopardy" classification and, after an intensive investigation, issued notice that Mission Hospital was in "immediate jeopardy" of losing CMS funding due to its disregard of ER patients' health and safety.[2]

---

[2] CMS's 384-page report detailed numerous horrific examples of Defendants' neglect of Mission ER patients, finding that at least three patients died and numerous others were endangered at Mission Hospital in 2022 and 2023 following significant delays and lapses of care in the emergency department and other areas. CMS concluded, *inter alia*, that "the hospital nursing staff failed to ensure a safe environment for the delivery of care to emergency department patients by failing to accept patients on

Only after such action by the NCAG and CMS did Defendants begin to take action to adequately staff its ER rather than deliberately relying on BCEMS to treat Mission's ER patients.[3]

## STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Halscott Megaro, P.A. v. McCollum,* 66 F.4th 151, 157 (4th Cir. 2023) (citation, quotations omitted). In evaluating a Rule 12(b)(6) motion, the Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 676-79 (2009). *See also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief."). This

_____

arrival to the emergency department resulting in delays or failure to triage, assess, and implement orders." The report is attached to the Complaint as Exhibit 19.

[3] To date in 2024, as a result of the above-described governmental actions, Defendants have caused EMS wait times at the Mission ER to decrease so that the rate of transfers within the 20-minute benchmark improved to approximately 93% for the moment. (ECF 1-1 ¶ 36). However, it is unknown how long that situation will continue and at any time Defendants may choose to revert to their prior practices, which both endanger patient safety and run up Plaintiff's costs.

analysis is context-specific and requires the court to draw on its "judicial experience and common sense." *Riddick v. Barber*, 109 F.4th 639, 647 (4th Cir. 2024).

"'Motions to strike are viewed with disfavor and are granted only for egregious violations. Thus, before a motion to strike will be granted, the allegations must be the type envisioned by the rule and prejudicial.'" *Brown v. Inst. for Family Centered Servs., Inc.,* 394 F. Supp. 2d 724, 727 (M.D.N.C. 2005). "As far as motions to strike pleadings on the basis of immateriality are concerned, a matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation." *Chapman v. Duke Energy Carolinas, LLC*, No. 3:09-cv-37-RJC, 2009 U.S. Dist. LEXIS 54568, at *3-4 (W.D.N.C. June 11, 2009) (cleaned up; citation and quotations omitted). "A motion to strike places a sizable burden on the movant, and would typically require a showing that denial of the motion would prejudice the movant." *Adolphe v. Option One Mortg. Corp.,* 2012 U.S. Dist. LEXIS 109486, at *4 (W.D.N.C. Aug. 6, 2012) (citation, quotations omitted)).

Likewise, "Rule 12(e) motions for more definite statement 'are viewed with disfavor, and are rarely granted.'" *Gibson v. Roupas*, 2023 U.S. Dist. LEXIS 21829, at *15-16 (M.D.N.C. Feb. 9, 2023) (quoting *State v. Exxon Mobil Corp.,* 406 F. Supp. 3d 420, 479 (D. Md. 2019). "Unlike a Rule 12(b)(6) motion, which tests the legal sufficiency of a complaint, a Rule 12(e) motion for a more definite statement focuses on whether a party has enough information to frame an

6

adequate answer." *Id.* (cleaned up). That is, a Rule 12(e) motion "strike[s] at

unintelligibly rather than simple want of detail." *Id.* (internal citations omitted).

Given federal notice-pleading standards, Rule 12(e) motions "are only granted

when the pleadings are so vague that the opposing party is unable to respond."

*M-CAM v. Richard D'Agostino*, No. 3:05-CV-00006, 2005 U.S. Dist. LEXIS

45289, at *9 (W.D. Va. Sep. 1, 2005) (quoting Charles Allen Wright and Arthur

R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1377 (West 2005).

A federal court's task in a diversity-jurisdiction case is to "apply

controlling state law on settled issues and predict how the state's highest court

would rule on unsettled issues." *Young v. Equinor USA Onshore Props.,* 982

F.3d 201, 206 (4th Cir. 2020).

## ARGUMENT

## I.   PLAINTIFF STATES A CLAIM FOR UNJUST ENRICHMENT.

### A. Plaintiff's Obligation to Provide EMS Services to Its Citizens Does Not Defeat Its Claim Against Defendants for Unjust Enrichment.

Defendants claim that in light of a State regulation requiring County

governments to provide ambulance services to their citizens regardless of ability

to pay,[4] no claim for unjust enrichment claim can lie against Defendants for

---

[4] 10A NCAC 13P.0201(a)(1) provides, *inter alia*, that "County governments shall establish EMS Systems. . . .  The highest level of care offered within any EMS Provider service area shall be available to the citizens within that service area 24 hours a day, seven days a week." Defendants also cite N.C.G.S. § 131E-155, a definitional section, as an

7

exploiting Plaintiff's EMS resources for their own benefit. (ECF 4-1 at 8).

Defendants selectively quote snippets of unjust-enrichment cases to

manufacture an argument that "Alice" may not maintain an unjust enrichment

claim against "Bob" if the benefit Bob received from Alice was connected to work

Alice was obligated to do for someone else. Defendants say that in order to

maintain an unjust enrichment action, Alice:

> must not have been acting in discharge of some legal obligation—
> meaning a statutory, common-law, or contractual duty. . . . North
> Carolina courts have held that a plaintiff cannot assert an unjust-
> enrichment claim based on actions taken to satisfy a contractual
> obligation, regardless of whether the contract was with the
> defendant or with a third party.

ECF 4-1 at 5, 7 (cleaned up).

Without question, "[i]f there is a contract *between the parties* the contract

governs the claim and the law will not imply a contract." *Booe v. Shadrick*, 322

N.C. 567, 570, 369 S.E.2d 554, 556 (1988) (emphasis added). However, under our

jurisprudence, where the plaintiff is acting under a duty to a *third party* (here,

BCEMS patients), there is no such bright-line defense.

Here, Plaintiff does not quibble with the general proposition that Alice

cannot recover from Bob for actions she would otherwise be duty-bound to

perform without any interference from Bob. For example, Buncombe County

would not have an actionable claim against Defendants merely for transporting

---

additional source of such a duty. (ECF 4-1 at 8). It unclear upon which part of
that statute or the Article to which it relates Defendants rely.

patients to the Mission ER, even though delivering patients to the hospital provides a financial benefit to Defendants. But because Defendants have manipulated the County's obligations to its BCEMS patients, for Defendants' financial benefit and to the County's detriment, they subject themselves to unjust enrichment liability. In other words, to use the Fourth Circuit's terminology, when the defendant manipulates the plaintiff's independent obligation to another person as a "sword"—to extract a benefit for itself—it should not be heard to use the same obligation as a "shield" to an unjust enrichment claim. *See Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.,* 72 F. App'x 916, 923 (4th Cir. July 30, 2003).

Defendants urge that a Buncombe County ordinance providing for a civil penalty against a person who fails to pay for ambulance services despite being financially able to do so somehow creates a *contractual* obligation on the part of Plaintiff to provide ambulance care for its citizens.[5] Defendants go so far as to argue that this ordinance gives rise to "'*express contracts* on the subject matter at issue' . . . [which] preclude Buncombe from bringing an unjust enrichment

---

[5] The ordinance cited by Defendants, Buncombe County Code § 22-28, provides in relevant part: "It shall be unlawful for any person to obtain or receive ambulance service without intending at that time of obtaining or receiving such services to pay, if financially able, the necessary charges. . . . Violations of this article, or the terms of any franchise granted under this article, shall be punishable by a civil penalty." *See* https://library.municode.com/nc/buncombe%20county/codes/code%20of%20ord inances?nodeId=COOR_CH22EMSE_ARTIIAMSE_DIV1GE_S22-28PEVIAR.

claim." (ECF 4-1 at 8 (emphasis added; quoting *Cabrera v. Harvest St. Holdings, Inc.,* 284 N.C. App. 227, 234, 876 S.E.2d 593, 598 (2022)). While Defendants might have a colorable argument that the ordinance creates an *implied* contract with EMS patients,[6] their contention that the ordinance creates an *express* contract sufficient to defeat an unjust enrichment claim[7] is devoid of merit.

But *even when* the plaintiff's actions are related to express contractual obligations to third parties, the plaintiff may nevertheless maintain an unjust enrichment claim against the benefited party depending on the facts and equities involved. In *Embree Constr. Group, Inc. v. Rafcor, Inc.,* 330 N.C. 487, 411 S.E.2d 916 (1992), for example, the plaintiff, a construction contractor, entered into a contract with Rafcor to supply labor and materials for the construction of a restaurant in Mecklenburg County. Separately, Rafcor entered

---

[6] *But see Pawlak v. Redox Corp.,* 182 Mich. App. 758, 765-66, 453 N.W.2d 304, 307-08 (1990) ("[T]he city had a duty to provide ambulance service and emergency medical assistance irrespective of an individual's ability to pay or source of payment. We feel that this provision established a preexisting duty upon the city to provide such care and therefore no consideration was present for an implied contract. . . . Plaintiff's implied contract claim was so clearly unenforceable as a matter of law that no factual development could justify a right to recovery." (citations omitted)).

[7] *See Cabrera,* 284 N.C. App. at 234, 876 S.E.2d at 598 ("If an *express* contract exists between the parties, then the contract governs the claim and the law will not imply a contract. . . . As such, quantum meruit is not an appropriate remedy when there is an actual agreement between the parties. . . . Only in the absence of an *express* agreement of the parties will courts impose a quasi contract or a contract implied in law in order to prevent an unjust enrichment" (cleaned up; emphasis added; citations omitted)).

10

into a construction loan agreement with defendant United Carolina Bank ("UCB"). Throughout the construction process, the plaintiff submitted applications for payment to Rafcor, which UCB paid directly to plaintiff from Rafcor's construction loan. UCB refused, however, to pay plaintiff's last two applications for payment after completion of the restaurant, even though Rafcor's loan was not yet in default. 330 N.C. at 489, 411 S.E.2d at 919. The Supreme Court held that under the circumstances the trial court erred in dismissing the plaintiff's unjust-enrichment claim, as follows:

> Plaintiff avers that by UCB's refusal to disburse the monies remaining in the construction loan fund, coupled with its receipt of all the security for which it bargained in the form of a completed building, UCB was unjustly enriched. We agree. As of completion of the building in March 1988, UCB had received all the security for which it had bargained with Rafcor. UCB's subsequent refusal to release the balance of the construction loan caused it to be unjustly enriched at the expense of plaintiff. . . .

> Accepting as true plaintiff's allegations that as of March 1988 it completed the project but was refused its applications for payment from the balance of the construction loan fund held by UCB, we hold plaintiff's complaint was sufficient to state a claim for relief in the form of an equitable lien based upon UCB's unjust enrichment.

330 N.C. at 495, 497, 411 S.E.2d at 922, 923.

Similarly, in *Metric Constructors*, *supra*, plaintiff Metric executed a contract with a limited partnership ("CELP") to build a factory. Later, CELP entered into separate loan agreements with various lenders (the "Banks"). The Banks were not parties to the construction contract, and Metric was not a party to the financing agreements. 72 F. App'x at 918. Throughout the construction

process, before the Banks paid Metric's requests for progress payments, (1) the Banks' engineer would visit the site to verify that the performance milestones had been met in compliance with the construction contract, and (2) the Banks would ensure that the funding conditions relating to CELP's funding agreements were satisfied. *Id.* at 919. Unbeknownst to Metric, however, after about nine months of construction the Banks determined that CELP was out of compliance with the lending agreements. They did not advise Metric of their concerns, but for two months continued to send their engineer to the site to certify Metric's progress. Eventually, CELP notified Metric that the Banks had ceased funding the project. *Id.* at 919-20. Metric sued the Banks for unjust enrichment, and the district court granted the Banks' motion for summary judgment.

The Fourth Circuit reversed. The Court rejected the Banks' argument that "there can be no unjust enrichment where the benefit conferred upon the defendant resulted from services rendered by the plaintiff 'in discharge of some obligation,'" *id.* at 922 (quoting *Atlantic Coast Line R.R. v. State Highway Com.,* 268 N.C. 92, 150 S.E.2d 70 (1966)), stating as follows:

> The Banks seek to use the contract between Metric and CELP as both a sword and a shield. On one hand, they argue that Metric was required to comply with all the conditions of that contract in order to make a proper claim for payment; they even imply that Metric was required to comply with conditions set out in their separate contract with CELP. On the other hand, the Banks contend that there can be no claim against them in equity because Metric had a contract with CELP. Yet it is precisely because there is no express contract between Metric and the Banks that an action for unjust enrichment is available.

*Id.* at 923 (citation, footnote omitted).

Defendants contend that the Court of Appeals' majority opinion in *Ron Medlin Const. v. Harris*, 199 N.C. App. 491, 681 S.E.2d 807 (2009), changed North Carolina law and implicitly overruled the Fourth Circuit's decision in *Metric Constructors*. They say that after the Court of Appeals' ruling in *Ron Medlin*, "a third-party contract precludes an unjust-enrichment claim in exactly the same way that a contract between the parties does." (ECF 4-1 at7 n.3). But Defendants fail to note that on appeal, the Court of Appeals' opinion was substantially narrowed by the Supreme Court. In *Medlin*, one of the partners in a partnership executed a construction contract with plaintiffs. He was not a licensed general contractor and, as a result, had no right under North Carolina law to be paid for construction work requiring a license. The Supreme Court held that the partnership, likewise, had no right to be paid for its work on the project merely because:

> as a matter of law, *a contract for the construction of a home or building executed by a partner* in a licensed partnership engaged in the construction business *is the contract of the partnership* unless the remaining partners can show that the partner was not authorized to act on behalf of the partnership.

364 N.C. at 588, 704 S.E.2d at 493 (emphasis added). In other words, the parties' relationship was governed by an express contract between them so that an unjust-enrichment claim could not lie.

But more fundamentally, the Court of Appeals' ruling, even if it had not been modified by the Supreme Court, would have done nothing to change the

relevant legal landscape on which *Metric Constructors* was decided. Our Courts recognized long before *Ron Medlin* that the existence of a contractual obligation to a third party on the subject matter at issue *can* defeat an unjust enrichment claim, depending on the facts and circumstances involved. *See, e.g., Vetco Concrete Co. v. Troy Lumber Co.*, 256 N.C. 709, 714, 124 S.E.2d 905, 908 (1962) ("When there is a contract between two persons for the furnishing of services or goods to a third, the latter is not liable on an implied contract simply because he has received such services or goods").

As discussed above, Buncombe County's obligations to provide EMS services to its citizens arise not in contract, but pursuant to State regulation. Accordingly, *Atlantic Coast Line, supra*—which involved statutory duties owed directly to the plaintiff, as opposed to third parties—is nevertheless instructive here. In *Atlantic Railroad*, the State Highway Commission widened two roads in McDowell County and then ordered the plaintiff railroad to widen its crossings on those roads, invoking statutory authority. The railroad protested and filed suit. The Superior Court ruled that the Commission was statutorily authorized to require the railroad to widen its crossings and ordered it to do so. The railroad substantially complied with the Superior Court's order. Two appeals followed. *See* 268 N.C. 92, 94, 150 S.E.2d 70, 72 (citing *State Highway Com. v. Clinchfield R. Co.,* 260 N.C. 274, 277, 132 S.E.2d 595, 597 (1963)).

In the second appeal, the railroad argued that the Commission lacked statutory authority to require the railroad to widen the crossings and sought

14

unjust enrichment damages for the cost of its construction work. The Supreme Court first determined that in enacting the subject statute, "[t]he Legislature clearly intended the statute to apply to the facts that exist here and to provide a remedy such as public safety, convenience and necessity might require." 268 N.C. at 95, 150 S.E.2d at 73. Hence the railroad was compelled by the Highway Commission to comply with a statutory obligation, as enforced by the superior court, and as a result was injured.

The Supreme Court first acknowledged that the equitable remedy of unjust enrichment does not lie "when the services are rendered gratuitously or *in discharge of some obligation*." 268 N.C. at 96, 150 S.E.2d at 73 (emphasis in original). Significant to the instant dispute, the Court then analyzed whether the Commission's actions in compelling the railroad to widen the crossing were just and appropriate:

> In order that the law will give redress for an act causing damage, *that act must be not only hurtful, but wrongful*. There must be *damnum et injuria*. It is a well-established maxim of the law that damage without wrong, or '*damnum absque injuria*,' does not constitute a cause of action. . . . An injury sustained in obeying a regulation within the scope of the police power, or damages incurred in complying with the provisions of a statute under coercion of a degree of the highest judicial tribunal enjoining the violation thereof, must be considered '*damnum absque injuria*.' Injury resulting from a *proper* exercise of a lawful power of the sovereignty is remediless, except so far as the sovereign power gives a remedy.

268 N.C. at 96, 150 S.E.2d at 73 (emphasis added; cleaned up; citations omitted).

*Atlantic Railroad* makes clear that when the actions of a plaintiff making an

15

unjust-enrichment claim (in that case, the railroad, here, Buncombe County) are governed by statute or regulation, a determination of whether the actions of the other party are "wrongful" or "proper" is nevertheless appropriate. In *Atlantic Railroad*, the actions of the Commission compelling the railroad to widen the railroad crossing were deemed proper; here, the conduct of Defendants alleged by Plaintiff is assuredly wrongful.

Defendants contend that Plaintiff is not entitled to restitution for unjust enrichment because its expenditures arose in the exercise of "the statutory and common-law duties that all health care providers owe to their patients— including the duty to provide care until it can safely be discontinued." (ECF 4-1 at 8). This is not the law. In *Charlotte-Mecklenburg Hosp. Auth. v. Talford*, 214 N.C. App. 196, 213, 714 S.E.2d 476, 488 (2011), for example, where the ER consent form signed by the patient "did not specify the amount to be charged to Defendant," the Court of Appeals concluded that the price term was indefinite, and "the outcome is . . . determined pursuant to a *quantum meruit* analysis." 214 N.C. App. at 211, 714 S.E.2d at 486-87. As a result, the hospital's measure of damages was "the reasonable value of the services provided to plaintiff" by the hospital. *Id.* at 196, 216 n.3, 714 S.E.2d 476, 489 n.3. The Court of Appeals concluded that there was a material issue of fact as to whether the charges were reasonable, and reversed summary judgment in favor of the hospital. On appeal, the Supreme Court reversed the Court of Appeals on the question of whether the hospital had established the reasonable value of its services. *Charlotte-*

*Mecklenburg Hosp. Auth. v. Talford*, 366 N.C. 43, 49-50, 727 S.E.2d 866, 870-71 (2012). The Court held that the hospital's affidavit in that case was sufficient to establish that the billing was "within industry norms," and sufficient to meet the hospital's burden of establishing the reasonableness of the charges. *Id.* at 870-71.

Here, the County's transportation of EMS patients to the Mission ER and associated care for those patients, as a general matter, is done in discharge of its obligations to them. However, the excessive wait times for which Plaintiff seeks restitution are the product of the Defendants' own wrongful actions. Because the Defendants, as a result of their profit-motivated decision to understaff the Mission ER, have exploited the County's obligations to BCEMS patients for Defendants' own benefit and in violation of their obligations under federal law, resulting in a windfall of millions of dollars to Defendants, Plaintiff is entitled to restitution.

### B. The Complaint Sufficiently Alleges that the Benefits to Defendants Were Measurable, That Defendants Consciously Accepted Them, and that Plaintiff Did Not Confer Them Officiously or Gratuitously.

A plaintiff asserting an unjust-enrichment claims must allege that it "conferred on the defendant a measurable benefit." *Kuder v. Schroeder*, 110 N.C. App. 355, 361, 430 S.E.2d 271, 275 (1993). Plaintiff's Complaint goes considerably further, alleging that (1) the national standard in which 90% of EMS-to-ER patient transfers should occur is 20 minutes; (2) in the year before

Defendants acquired the Mission ER, 96% of ER patient handoffs occurred within 20 minutes; (3) by third quarter 2023, Defendants had caused the rate of transfers within the 20-minute benchmark to drop to 72%; (4) after State and federal officials intervened, Defendants caused the rate of transfers within the 20-minute benchmark to increase to approximately 93%; and (5) Plaintiff has the data and ability to calculate 90th percentile times during all relevant times. (ECF 1-1 ¶¶ 25-27, 36). Accordingly, Defendants' contention that the benefit conferred upon them by Plaintiff is not measurable (ECF 4-1 at 9) lacks all substance.

Defendants also claim that the Complaint fails to allege that they consciously accepted the benefit. (*Id.* at 10). To the contrary, the Complaint alleges that Plaintiff made numerous fruitless demands on Defendants beginning in 2019 to remedy the situation, but only after State and federal enforcement actions were commenced did Defendants finally take action, (ECF 1-1 ¶¶ 28, 36). These allegations, if proven, would establish Defendants' conscious acceptance of benefits from Plaintiff.

Similarly, the Complaint specifically and adequately alleges that Plaintiff did not provide the benefits to Defendants "officiously" or "gratuitously." (*See* ECF 1-1 ¶¶ 45-50). Plaintiff did not voluntarily provide the additional care to BCEMS patients; rather, it was induced to do so because of Defendants'

18

unlawful conduct.[8]  The fact that Plaintiff made numerous demands on Defendants to correct the situation shows that the Plaintiff in no way intended the excessive wait times to be a gift bestowed on Defendants without expectation of payment. Rather, such demands would "put a reasonable person on notice that the services are not gratuitous." *Johnson v. Sanders*, 260 N.C. 291, 293, 132 S.E.2d 582, 584 (1963). *See generally Twiford v. Waterfield*, 240 N.C. 582, 585, 83 S.E.2d 548, 551 (1954) ("[P]roof that services of value were rendered and voluntarily received raises a presumption or will support the inference that compensation was contemplated by the parties").

---

[8] In this regard, we note the averments found in certain of the affidavits originally submitted in connection with the Attorney General's case, which were also filed as exhibits with the Complaint herein.  The affidavits from EMS professionals reflect conditions supporting the inference that EMS personnel were induced to provide additional time-consuming care in situations in which Defendants' personnel must have been aware of the work being performed. *See* ECF 1-2, Affidavit of Van Taylor Jones ¶ 13 ("Our Paramedics are forced to provide Advanced Life Support Measures to many of our patients *in the hallways of Mission Hospital*, while awaiting room assignments and RN's to hand the patients off to maintain continue continuity of care") (emphasis added); Affidavit of Landon Miller ¶¶ 9 ("HCA is relying on our paramedics to provide medical treatment to patients still waiting to be seen by Emergency Department medical staff. This has become a common occurrence at Mission Hospital, but one that we do not experience at any other hospital." The care includes "medication administration, intravenous medicine drips, providing oxygen, and cardiac monitoring."), 15 (stating that Mission CEO said "they were aware off the problem"); Affidavit of Adrienne Rivera Jones ¶ 14 ("When we are in the HCA Mission Emergency Department waiting for patients to be assigned to a room, hospital staff *will direct us* to use our medications and supplies on the patients while we are waiting for the hospital to take over their care") (emphasis added).

19

Finally, Defendants reach beyond the scope of the pleadings to point out that Buncombe County is entitled to revise its schedule of rates, fees, and charges for EMS services but has not increased ambulance fees in over three years. (ECF 4-1 at 2-3). Defendants then claim that the County seeks redress for "services it has already been paid for under rates it chose to charge." (*Id.* at 4). As the Complaint alleges, however, the fees charged by the County to BCEMS patients only partially cover the cost of the service, and the County has been required to foot the bill for the additional costs resulting from Defendants' misconduct at issue. (ECF 1-1 ¶ 17). Presumably Defendants intend to suggest that the County *should* increase BCEMS fees to cover additional personnel costs necessitated by Defendants' failures adequately to staff the Mission ER. Plaintiff has no interest, however, in saddling already overburdened Buncombe County citizens with additional fees in order to increase Defendants' profit margins, and certainly has no obligation to do so.

## II.   THE COMPLAINT SHOULD NOT BE DISMISSED ON STATUTE OF LIMITATIONS GROUNDS.

Defendants contend that the Court should dismiss the unjust enrichment claim to the extent it is based on events occurring before September 4, 2021. (ECF 4-1, p. 13). The complaint was filed in state court on August 6, 2024, and removed to this Court on September 4, 2024. (*See* ECF 1-1, p. 1). Under N.C.G.S. § 1-52(1), a "claim for unjust enrichment must be brought within three years of accrual." *Stratton v. Royal Bank*, 211 N.C. App. 78, 85 (2011). Defendants bear

the burden of proof that the statute of limitations, an affirmative defense, bars the claim. Fed. R. Civ. P. 8(c)(1); *Stack v. Abbott Labs., Inc.*, 979 F. Supp. 2d 658, 664 (M.D.N.C. 2013). A court can reach the merits of a limitations issue at the Rule 12(b)(6) stage only "if all facts necessary to the [statute of limitations] defense 'clearly appear[] on the face of the complaint.'" *Stack*, 979 F. Supp. 2d at 664 (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)). "A claim for unjust enrichment is subject to a three year statute of limitations period that runs from the date the claim accrues." *Celgard, LLC v. LG Chem, Ltd.*, No. 3:14-CV-00043-MOCDC, 2015 WL 2412467, at *16 (W.D.N.C. May 21, 2015). An unjust enrichment claim accrues "when the wrong is complete." *Mountain Land Properties, Inc. v. Lovell*, 46 F. Supp. 3d 609, 626 (W.D.N.C. 2014). Here, the last wrongdoing took place at least as late as the "third quarter of 2023." (ECF 1-1, ¶ 26). The Complaint further alleges that the wrongdoing continued until the Attorney General sued on Dec. 14, 2023 (ECF 1-1, ¶ 3 & Ex. 1) and the CMS agency issued a report on ER quality on December 19, 2023. (*Id.* ¶ 5 & Ex. 18). Those events all occurred less than a year before the lawsuit was filed. To the extent Defendants seek to use their motion to dismiss to raise issues regarding how far an ultimate damages or restitution period should run, it is premature. The motion should be denied in this respect.

## III. THE COMPLAINT IS WELL-PLEADED AND THE MOTION TO STRIKE SHOULD BE DENIED.

Defendants next argue that the Court should strike various paragraphs in the Complaint. (ECF 4-1, pp. 13-14). The contention is ill-founded. Defendants argue that "the references to quantum meruit, restitution, and disgorgement should be stricken … because each refers to a remedy potentially available for unjust enrichment rather than to a distinct legal claim." (ECF 4-1, p. 14). However, Plaintiff has included all such references within the auspices of a single claim for relief sounding in unjust enrichment, and terms such as quantum meruit and restitution are associated with unjust enrichment and relate to unjust enrichment remedies. The motion to strike should be denied.

Next, Defendants argue that topics such as whether the hospital provides substandard quality of care and citations to other litigation are "topics that have nothing to do with Buncombe County's legal theories." (ECF 4-1, p. 14). This argument turns the Rule 12 standard on its head. Plaintiff alleges that Defendants provided poor service as manifested by the poor ER service that forced the Plaintiff to confer the benefits of its EMS staff and service on Defendants unjustly. The egregious alleged wait times or wall times exemplify substandard quality of service. There is no basis to strike any allegations. Likewise, the citations to the Attorney General's action is alleged to be a relevant part of the events and timeline herein. (ECF 1-1, ¶¶ 3-4, etc.).

22

## IV. THE MOTION FOR A MORE DEFINITE STATEMENT SHOULD BE DENIED.

Finally, Defendants contend that the Court under Rule 12(e) should order Plaintiff to reallege its pleading as a "a more definite statement" because the Complaint is "so vague or ambiguous that the party cannot reasonably prepare a response." (ECF 4-1, p. 15). As discussed above in connection with Defendants' contentions regarding the unjust enrichment claim, however, the claim is properly pled and certainly affords Defendants proper and adequate notice of the claim. Under Rule 8(a)(2), the Complaint provides "a short and plain statement of the claim showing that the pleader is entitled to relief." Nor is there any requirement for pleading with particularity as in the case of a fraud claim. *See* Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."). There is no duty for the County to plead "each specific incident" as demanded by Defendants. (ECF 4-1, p. 15). The case should proceed to discovery.

## CONCLUSION

Plaintiff respectfully requests that Defendants' motion be denied in all respects.

Respectfully submitted this the 8th day of November, 2024.

/s/ Robert N Hunter, Jr.
Robert N Hunter, Jr.
(N.C. Bar No. 5679)
John Bloss
(N.C. Bar No. 23947)
Higgins Benjamin, PLLC
301 N Elm Street, Suite 800
Greensboro, NC 27401
336-273-1600
Fax: 336-274-4650
rnhunterjr@greensborolaw.com
jbloss@greensborolaw.com

Mona L. Wallace
(N.C. Bar No. 09021)
John S. Hughes
(N.C. Bar No. 22126)
Olivia Smith
(N.C. Bar No. 58375)
WALLACE & GRAHAM, P.A.
525 N. Main St.
Salisbury, NC 28144
704-633-5244 Telephone
mwallace@wallacegraham.com
jhughes@wallacegraham.com
osmith@wallacegraham.com

*Attorneys for Plaintiff*

## Certificate of Service and of AI Use

The undersigned certifies that this document is being filed by CM-ECF which shall effectuate electronic services on all counsel of record.

The undersigned certifies that this foregoing document complies with this Court's standing order at 3:24-mc-104 because its preparation did not involve the use of prohibited artificial intelligence tools and because an attorney has personally verified its accuracy as required.

November 8, 2024.

/s/ Robert N Hunter, Jr.
Robert N Hunter, Jr.
(N.C. Bar No. 5679)
John Bloss
(N.C. Bar No. 23947)
Higgins Benjamin, PLLC
301 N Elm Street, Suite 800
Greensboro, NC 27401
336-273-1600
Fax: 336-274-4650
rnhunterjr@greensborolaw.com
jbloss@greensborolaw.com

*Co-counsel for Plaintiff*